UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DENNIS JOHN TIMS,**

        **Plaintiff,**

        v.                                Case No. 24-C-1285

**RANDALL HEPP, YARI PUSICH,
KINARD, SGT. MANTEE[1],
NELSON, and BRENT PLATE,**

        **Defendants.**

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Dennis John Tims, who is incarcerated at Waupun Correctional Institution (WCI) and representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Randall Hepp, Yari Pusich, Scott Kinard, Christopher Manthei, Anthony Nelson, and Brent Plate violated his civil rights. Tims is proceeding on an Eighth Amendment conditions-of-confinement claim against Defendants for the denial of outdoor recreation for one year between 2023 and 2024 and a First Amendment retaliation claim against Sergeant Plate. This matter comes before the court on Defendants' motion for summary judgment. For the following reasons, Defendants' motion will be granted and the case will be dismissed.

### BACKGROUND

At the relevant time, Tims was housed at WCI. Defendants all worked at WCI: Randall Hepp was the warden; Scott Kinard was a captain; Yana Pusich was the security director; and Christopher Manthei, Anthony Nelson, and Brent Plate were sergeants. Dkt. No. 72, ¶¶ 1–5.

---

[1] The Clerk is directed to correct the caption to reflect that Defendant Sgt. Mantee's name is Christopher Manthei.

WCI is a maximum-security prison that houses about one thousand inmates. In early 2023, WCI experienced a rise in disorder and defiance throughout the "person in our care" (PIOC) population. As a result, in March 2023, Warden Hepp instituted a "lockdown" at WCI to restrict movement for the PIOC population. The goals of the lockdown were to reestablish expectations for inmate counts, movement, showers, and other everyday activities and attempt to restore discipline at the institution. As the PIOC population began to show compliance, restrictions would be gradually lifted. *Id.* ¶¶ 7–14.

On April 18, 2023, Warden Hepp issued a memo to the PIOC population regarding the expectations of the modified movement restriction. As relevant here, the memo provided the PIOC population with information related to standing counts and cell front checks. Standing counts would occur at 6:00 a.m., 11:45 a.m., 5:00 p.m., and 9:00 p.m. During the standing count, an inmate must stand at the front of his cell with the lights on. Cell fronts and bed frames were required to be free of any items such as blankets, clothing, or other articles to allow clear visibility into the cell and bunks at all times. Both the standing counts and cell front checks were in effect before the lockdown, but the memo reiterated the daily practice and expectations to regain compliance and order throughout the institution. *Id.* ¶¶ 16–18.

On April 25, 2023, Warden Hepp issued a memo to all institution uniformed staff with information on reporting and evaluating PIOC population compliance with the expectations. Staff were directed to use "Compliance Tracking Logs" for each individual in the general population that recorded whether the inmate had complied with standing count and cell front rules. Officers were to utilize the logs to record when inmates were present during the standing counts and if their cell fronts were clear during random check-ins twice a day. Staff were instructed to write "Y" in the log to indicate if an inmate was standing for count and the cell front was clear and "N" if they were not. *Id.* ¶¶ 21–22, 25–27.

An inmate's compliance with standing count and the cell front rules determined his eligibility to participate in recreation. If an inmate was non-compliant—meaning that he did not stand for count or his cell front was not clear—more than twice in a one-week period, he would lose his eligibility to participate in recreation. Recreation eligibility based on compliance with standing counts and cell front checks would be assessed each week. Therefore, if an inmate was non-compliant one week, he would not be eligible for recreation that week. But if he was compliant the next week, he could participate in recreation. *Id.* ¶¶ 30–32.

WCI staff began using the Compliance Tracking Logs on May 4, 2023. Between May 7, 2023, and May 4, 2024, Tims' compliance with standing count and cell fronts was recorded for 49 weeks. Of those 49 weeks, Defendants assert that Tims was non-compliant for 48 of them. Tims did not receive outdoor recreation in the weeks in which he was non-compliant. However, in the one week in which Tims was compliant, he was eligible for outdoor recreation. *Id.* ¶¶ 42, 46–48.

Tims does not dispute that he did not stand for every cell count. But he asserts that he never covered his cell front, he never received a conduct report for standing counts and cell front violations, and he was never cited or found guilty of any serious misconduct between March 28, 2023 and May 2024. Dkt. No. 84 at 1–2, 5.

On February 22, 2024, Sergeant Plate issued a conduct report to Tims for possession of intoxicants. After a formal due process hearing was held on the conduct report, a hearing officer found Tims not guilty and dismissed the conduct report. Tims did not submit an inmate complaint about Sergeant Plate prior to February 22, 2024. Dkt. No. 72, ¶¶ 57–58, 60–62.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence

and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

**A. Eighth Amendment**

Tims asserts that he was denied outdoor recreation for over one year between 2023 and 2024 in violation of the Eighth Amendment. "'Cruel and unusual punishment' of individuals convicted of crimes is prohibited by the Eighth Amendment." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). But "the Eighth Amendment is implicated only in those cases where a prisoner is deprived of the 'minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate inhumane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Although exercise is recognized as a necessary requirement for physical and mental well-being, "short-term denials of exercise may be inevitable in the prison context and are not so

4

detrimental as to constitute a constitutional deprivation." *Delaney v. DeTella*, 256 F.3d 679, 683–84 (7th Cir. 2001) (collecting cases). The Seventh Circuit has held that a 90-day period of a denial of yard privileges as a sanction for misconduct does not inflict cruel and unusual punishment on an inmate. *See Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001). The Seventh Circuit has also found that imposing consecutive 90-day periods of such privileges for separate misconduct violations does not violate the Eighth Amendment unless the sanctions were given for "some utterly trivial infraction of the prison's disciplinary rules." *Id.* at 885. The court explained that "it is wrong to treat stacked sanctions as a single sanction" because to do so would produce the "ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim." *Id.* at 886.

In this case, Tims was found noncompliant with the standing count and cell fronts requirements for 48 weeks and received consecutive disciplines of a one-week denial of outdoor recreation for each week. Tims does not dispute that he did not stand for every cell count. But he asserts that he did not engage in serious misconduct and therefore should not have been denied outdoor recreation.

The court concludes that no jury could reasonably conclude that Defendants acted "wantonly and with a sufficiently culpable state of mind" to the risk of harm Tims may have faced from the restriction to his outdoor recreation. *Lunsford*, 17 F.3d at 1579 (citation omitted). Defendants explain that, due to an increase in disorder and defiance throughout the PIOC population, Warden Hepp instituted a "lockdown" to restrict movement and reestablish expectations for inmate counts and everyday activities. One goal of the lockdown was to restore discipline at the institution and, as the PIOC population began to show compliance, restrictions would gradually be lifted. As the Supreme Court acknowledged long ago, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . . .

5

Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 457 (1979). This is because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547–48.

Defendants were forced to navigate a difficult set of circumstances, namely, the increase in disorder and defiance throughout the PIOC population. Even if Defendants failed to navigate these circumstances perfectly, "[m]ere negligence does not satisfy the deliberate indifference standard." *Lunsford*, 17 F.3d at 1580. Given Defendants' explanation that the restriction was essential to the maintenance of discipline and order within the institution, no reasonable jury could conclude that Defendants were deliberately indifferent to the risk of harm Tims may have faced from the restriction. In short, Tims' consecutive, short denials of outdoor recreation do not violate the Eighth Amendment. Defendants also argue that they are entitled to qualified immunity, but because the court is granting summary judgment in their favor on the merits, it need not address that argument.

### B. First Amendment

Tims asserts that Sergeant Plate issued Tims a conduct report in retaliation for an inmate complaint Tims had submitted about him. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citations omitted).

6

Tims' retaliation claim fails because he has not shown that he engaged in activity protected by the First Amendment. In his complaint, Tims alleged that he filed a complaint about Sergeant Plate kicking Tims' cell door while he was sleeping a few weeks before the cell search. The court screened the complaint and allowed Tims to proceed on a retaliation claim against Sergeant Plate on that basis. Dkt. No. 16. But there is no evidence that Tims submitted an inmate complaint about Sergeant Plate before Sergeant Plate issued the conduct report.

Tims does not dispute that he did not submit an inmate complaint about Sergeant Plate before February 22, 2024. Instead, he asserts that this lawsuit, in which Tims originally named other officers as defendants and later amended the complaint to include Sergeant Plate, was the protected activity that motivated Sergeant Plate's decision to take retaliatory action against him. Tims cannot alter the basis of his retaliation claim in response to Defendants' motion for summary judgment. *See Colbert v. City of Chicago*, 851 F.3d 649, 658–59 (7th Cir. 2017) (noting that a plaintiff "cannot, in his opposition to defendants' motion for summary judgment, amend his pleadings, introduce new theories of liability, or add entirely new factual bases not previously presented" (cleaned up)). There is no evidence from which a jury could reasonably conclude that Tims engaged in activity protected by the First Amendment. Therefore, Sergeant Plate is entitled to summary judgment on Tims' retaliation claim. Again, because the court is granting summary judgment on the merits, it need not consider Defendants' qualified immunity arguments.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 70) is **GRANTED**. This case is **DISMISSED**. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 8th day of January, 2026.

_____
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.